# Richmond.

## FERDINAND NEY V. JOSEPH H. HAUN.

### November 17, 1921.

1. CARRIERS—*Who are Common Carriers—Special Contract of Carriage Between Points Not on Usual Route of Carrier—Case at Bar.*—Defendant was a licensed transfer man with his place of business at Bridgewater, and had no license to do business in Harrisonburg. On a former occasion he had hauled a load of potatoes from Harrisonburg to Washington for a brother of the plaintiff, and that was the only time he had ever hauled to Washington until he undertook to haul plaintiff's furniture from Harrisonburg to Washington. Defendant had never held himself out as undertaking to carry goods for the public generally between Harrisonburg and Washington.

   *Held:* That defendant, although a common carrier of goods in Bridgewater, was not such carrier from Harrisonburg to Washington, and therefore was not liable as an insurer on his undertaking to carry plaintiff's goods from Harrisonburg to Washington.

2. CARRIERS—*Who are Common Carriers—Essential Elements—Holding Out as Carrier on Particular Route.*—One of the essential requisites to constitute a person a common carrier of goods in a particular instance is that the carriage in question must be over a route or within a territory over or within which there has been a general undertaking by the person, a holding of himself out as undertaking, to carry goods for the public generally, as a business. Such undertaking need not be express. It may be implied from conduct. But, if so implied, it must be evidenced by a series of acts.

3. CARRIERS—*Who are Common Carriers—Essential Elements—Holding Out as Carrier on Particular Route.*—Thus common carriers cannot be required to carry by a route to which his business does not extend. And even if a carrier should in a particular instance undertake by a special contract to carry goods by unusual and exceptional routes, his liability would be based upon his contract, and not measured by the ordinary rules governing common carriers.

Error to a judgment of the Circuit Court of Rockingham county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

This is an action of trespass on the case in assumpsit instituted by Ney, the plaintiff in error, as plaintiff in the court below, against Haun, the defendant in error, as defendant in the court below, to recover alleged damages to a certain victrola and other articles of furniture, which the defendant undertook for hire to carry for the plaintiff from the city of Harrisonburg, Va., to the city of Washington, D. C., by means of an automobile truck, the furniture being badly broken to pieces en route by the overturning of the truck.

There was a trial by jury and a verdict and judgment for the defendant.

The evidence is conflicting on the subject of whether the accident was caused by the negligence of the defendant, and there was testimony to the effect that the accident was not caused by any negligence of the defendant; so that upon that issue the verdict could not be disturbed by the court.

The plaintiff, however, contended before the trial court, and urges before us, that the defendant was a common carrier with respect to the undertaking of carriage in question, and was, therefore, liable as an insurer, under the doctrine, applicable at common law, fixing the liability of a common carrier in such case. And upon that subject the plaintiff asked the court to instruct the jury, as follows:

"The court instructs the jury that if they believe the said defendant, Haun, contracted with the said plaintiff, Ney, to transport his furniture from Harrisonburg, Va., to the

city of Washington, and that the said property was injured or destroyed while in the possession of the said Haun, through no fault on the part of said Ney, then the jury must find for the plaintiff such damages as from all the evidence in the case they may believe him entitled to."

The court refused to give such instruction. That action of the court is by the plaintiff assigned as error.

The evidence in the case bearing on the question of whether the defendant was a common carrier with respect to the undertaking of carriage involved is uncontroverted, and is as follows:

. The defendant testified "that he was a licensed transfer man under the laws of Virginia with his place of business at Bridgewater, Rockingham county; that he had no license to do business in the city of Harrisonburg; that on a former occasion he had hauled a load of potatoes to Washington for a brother of the plaintiff, and that was the only time he ever hauled to Washington until he took the plaintiff's furniture."

In regard to the undertaking of carriage involved in the instant case, the defendant testified "that he was called (by the plaintiff by telephone) from Bridgewater to Harrisonburg for the purpose of contracting for the hauling of the load of furniture from Harrisonburg to the city of Washington and that he (the defendant) agreed to haul the same for the sum of forty-five dollars."

*Chas. A. Hammer*, for the plaintiff in error.

*H. W. Wyant*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1] The sole question presented for our decision in the instant case is the following:

1. Was the defendant, Haun, although a common carrier of goods in Bridgewater, such carrier from Harrisonburg to Washington, at the time of the undertaking of carriage involved in this action?

This question must be answered in the negative.

It appears from the uncontroverted evidence in the case that the carriage of goods by the defendant from Harrisonburg to Washington was not the habitual business of the defendant, but a casual undertaking merely. He did not pursue the business of carrying goods over that route as a public employment. He had never held himself out as undertaking to carry goods for the public generally between those places.

[2, 3] By the great weight of authority, one of the essential requisites to constitute a person a common carrier of goods in a particular instance is that the carriage in question must be over a route or within a territory over or within which there has been a general undertaking by the person— a holding of himself out as undertaking—to carry goods for the public generally, as a business, over that route or within that territory. Hutchinson on Carriers (3rd ed.), secs. 47, 48, 49, 60; 1 Michie on Carriers, secs. 1 and 2; 6 Am. & Eng. Enc. of Law (2nd ed.), pp. 251, 252, 253; 10 C. J., p. 41, and authorities cited by these textbooks, too numerous to be cited here. The dominant and controlling factor, which is the test of the nature of the employment and which fixes the carriage as that of a common carrier, is the public profession, the public undertaking; and that undertaking fixes also both the character of the articles undertaken to be carried and the extent of the territory covered by the business. It is true that the undertaking need not be express. It may be implied from conduct. But if the undertaking is to be

implied from conduct, it must be evidenced, as said in *Fish* v. *Chapman*, 2 Ga. 349, at p. 354, 46 Am. Dec. 393, "by a series of acts, by known habitual continuance in this line of business."

As said in Hutchinson on Carriers, *supra*, sec. 60: "Must undertake to carry by customary * * * route.—Common carriers * * * undertake to carry * * * only * * * over the route to which their business is confined. Thus, common carriers * * * cannot be required to carry * * * by a route to which his business does not extend. And even if a carrier should in a particular instance, undertake by a special contract to carry goods by unusual and exceptional * * * routes, his liability would be based upon his contract and not by the ordinary rules governing common carriers." (This is, of course, not applicable in cases where the common law rule has been changed by statute; but there is no such statute bearing upon the case before us.)

As said, however, by the same authority last cited, in another place (sec. 49): "What circumstances will be sufficient to invest the employment of the carrier in particular cases with the character of a public one, and what profession or course of dealing on his part will be considered as enough to constitute him a common carrier, instead of a private carrier for hire, is, however, sometimes a question of no little difficulty, and has given rise to a considerable diversity of opinion and controversy. The criterion by which it is to be determined whether he belongs to the one class or the other is generally considered to be whether he has held himself out or has advertised himself in his dealings or course of business with the public as being ready and willing, for hire, to carry perishable classes of goods for all those who may desire the transportation of such goods *between places which he professes in this manner*

36

*his readiness and willingness to carry.* If he has done so, he is, of course, to be regarded as a common carrier; but if not, he will be treated as a private carrier for hire." (Italics supplied.) As shown by this authority, such is the rule in England and in a large majority of the American courts. To the same effect, see *Carleton* v. *Boudar*, 118 Va. 521, 525-7, 88 S. E. 174, 4 A. L. R. 1480.

The textbook last cited thereupon proceeds, in sections 50, 51, 52 and 53 and notes, with a review of the minority holding of certain cases in Pennsylvania, Tennessee and New Hampshire, which is referred to as the Pennsylvania rule, and which denies the necessity for any public profession or undertaking in order to impose upon the carrier the character and consequent liability of a common carrier, and which holds that one who has never assumed the character of a public carrier, whose contract to carry may be confined to one particular instance, or *pro hac vice*, as it is termed, may assume thereby all the responsibilities of a common carrier, if he has occasionally accepted the goods of others for transportation for hire. These holdings are not considered sound by the learned author of the textbook last cited, and we concur in that view. In the leading case of *Fish* v. *Chapman, supra* (2 Ga., at p. 355), there is also a disapproval of the Pennsylvania rule, where it is said that there can be little doubt that that holding "is opposed to the principles of the common law and its rule wholly inexpedient." Citing numerous authorities.

The case of *Farley* v. *Lavarly*, 107 Ky. 523, 54 S. W. 840, 21 Ky. Law Rep. 1252, 47 L. R. A. 383, among the authorities relied on for the plaintiff, does not rest upon the Pennsylvania rule. It is, however, peculiar in its facts. In that case, the inception of the carriage was within the city, the corporate limits of which were the territorial limits of the usual business of the carrier—almost

the whole route of the carriage was within such limits; but the contract of carriage and the carriage involved in that action in fact extended somewhat beyond the limits of the city. The question was whether the carrier was acting as a common carrier and liable as such while carrying the goods outside of the city limits. The court, on the single authority of *Ireland* v. *Mobile, etc., R. Co.*, 105 Ky. 400, 49 S. W. 188, 453, 20 Ky. L. Rep. 1586, 1589, applied the doctrine there laid down as applicable to railroad companies, and held that the contract was made by the carrier in his capacity of a common carrier and was in effect a contract to carry for the whole distance in the capacity of a common carrier. We feel that we are not called upon to approve or to disapprove of the holding in that case, as its facts are entirely dissimilar to those of the case before us.

In conclusion, we will say that while we have no disposition whatever to relax the established rules with respect to what undertaking, express or implied, constitutes a common carrier, nor to relieve common carriers from any of the duties or responsibilities imposed upon them by law; we have no disposition to extend those rules, so as to embrace within them those who, according to the majority view of the courts on the subject, are not common carriers.

The case will be affirmed.

*Affirmed.*