## WILLIAM HOULE *vs.* JOHN LEWONIS.

Hampshire.    February 27, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & PIERCE, JJ.

*Carrier,* Of goods.    *Truckman.    Contract,* Performance and breach.

Statements by DECOURCY, J., of the difference between the liability imposed by law upon a common carrier of goods and upon a private carrier.

One who held himself out as a common carrier of goods by truck in the town of Easthampton in this Commonwealth did not as a matter of law thereby hold himself out as such common carrier to transport goods from Brattleboro in the State of Vermont to Easthampton; and where, in an action of contract against him for loss of goods during such transportation, the controlling issue was, whether the defendant was acting as a common or as a private carrier, and there was evidence tending to show that he had not held himself out as a common carrier of goods by truck outside of the town of Easthampton, the judge should have granted requests by him for rulings that " Unless the defendant held himself out as ready to do moving jobs for all comers of the nature of that undertaken for the plaintiff, in the regular practice of his business, he was not a common carrier," and that " If the defendant only undertook work of this kind occasionally for such as made a special bargain for such work, then he was not a common carrier with reference to this job."

TORT or CONTRACT, with a declaration in two counts, of which only the count in contract was relied on at the trial, for loss of furniture delivered to the defendant at Brattleboro in the State of Vermont for transportation to Easthampton in this Commonwealth.    Writ dated September 30, 1920.

In the Superior Court, the action was tried before *Irwin,* J. Material evidence is described in the opinion.    At the close of the evidence, the defendant moved that a verdict be ordered in his favor and, subject to his exception, the motion was denied.    The defendant asked for the following rulings:

" 1. That there is no evidence that the defendant was acting as a common carrier in this transaction.

" 2. Unless the defendant held himself out as ready to do moving jobs for all comers of the nature of that undertaken for the plaintiff, in the regular practice of his business, he was not a common carrier.

" 3. If the defendant only undertook work of this kind occasionally for such as made a special bargain for such work, then he was not a common carrier with reference to this job.

" 4. The defendant is not liable unless the fire was caused by the negligence of himself or his employees."

The rulings were not given. There was a verdict for the plaintiff in the sum of $513.50; and the defendant alleged exceptions.

The case was submitted on briefs.

*R. P. Stapleton,* for the defendant.

*J. L. Lyman & D. A. Foley,* for the plaintiff.

DeCourcy, J. The plaintiff's household furniture, while being transported in the defendant's truck from Brattleboro, Vermont, to Easthampton in this Commonwealth was damaged by fire soon after starting. The first count in the declaration, which alone went to the jury, was in contract, and alleged in substance that the defendant acted as a common carrier in the transaction. There was a verdict for the plaintiff. Exceptions were taken by the defendant to the judge's refusal to direct a verdict in his favor, or to give certain requested rulings; and to specified portions of the charge.

The controlling issue in the case was whether the defendant was moving the plaintiff's furniture as a private carrier or as a common carrier. If the former, he would be liable only in case the damage to the furniture was due to the driver's negligence. But, if acting as a common carrier, his liability was practically that of an insurer. The former is not bound to carry for any reason unless he enters into a special agreement to do so: while a common carrier is bound to carry for all who offer such goods as he is accustomed to carry and tender reasonable compensation for carrying them. 4 R. C. L. 549. *Seaver* v. *Bradley,* 179 Mass. 329. *Allen* v. *Sackrider,* 37 N. Y. 341. As was said by this court as long ago as *Dwight* v. *Brewster,* 1 Pick. 50, 53: " A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place." In the ordinary instances of those exercising a common calling, and bound to exercise it on demand, no

question ordinarily arises as to the nature of their under-
taking. Our first case dealing with railroads was *Thomas
v. Boston & Providence Railroad* 10 Met. 472, 475. *Buck-
land* v. *Adams Express Co.* 97 Mass. 124, was the case of an
express company, and it was said (page 129) that " The
real nature of their occupation and of the legal duties and
obligations which it imposes on them is to be ascertained
from a consideration of the kind of service which they hold
themselves out to the public as ready to render to those who
may have occasion to employ them." In *Gurley* v. *Armstead,*
148 Mass. 267, the defendant was a job teamster, who re-
moved the plaintiff's goods from the dwelling house of one
Whittier, and delivered them elsewhere to Whittier, by
whose direction he had acted. In deciding that Armstead
was not liable for conversion, the court said (page 268):
" The defendant was a job teamster, and thus in a small
way a common carrier of such wares and merchandise as
could appropriately be transported in his team or wagon.
He exercised an employment of such a character that he
could not legally refuse to transport property such as he
usually carried, which was tendered to him at a suitable
time and place with the offer of a reasonable compensation.
If he holds himself out as a common carrier, he must exercise
his calling upon proper request and under proper circum-
stances." In accord with this general proposition that
a teamster or truckman may be a common carrier, see
*Jackson Architectural Iron Works* v. *Hurlbut,* 158 N. Y. 34,
38; *Stevenson & Co. Inc.* v. *Hartman,* 231 N. Y. 378; *Lloyd*
v. *Haugh,* 223 Penn. St. 148; *Arkadelphia Milling Co.*
v. *Smoker Merchandise Co.* 100 Ark. 37; *Hinchliffe* v. *Wenig
Teaming Co.* 274 Ill. 417; *Collier* v. *Langan & Taylor Storage
& Moving Co.* 147 Mo. App. 700. See also *Astrella* v.
*Laffey,* 222 Mass. 469.

While a truckman or teamster who holds himself out as
a common carrier will be liable as such, yet there may be
limitations to the scope of his liability. Thus in *Gurley* v.
*Armstead, supra,* it was recognized that the duty to receive
and transport goods, and the corresponding absolute liability
for damage while so doing, are limited to the truckman's

facilities for the work.   Other cases applying this limitation
are *Tunnel & Short* v. *Pettijohn*, 2 Harringt. (Del.) 48, 49,
*Thompson* v. *Matthews*, 2 Edw. Ch. 212, 216, 217, *Ocean Steam-
ship Co.* v. *Savannah Locomotive Works & Supply Co.* 131 Ga.
831.   More pertinent to the present case is the limitation
that a truckman, like any other common carrier, is subject
to the duties of one only within the territorial limits to which
he devotes his common service.   Thus in *Ney* v. *Haun*, 131
Va. 557, the defendant was licensed to carry goods in Bridge-
water, but had not made a practice of trucking outside the
town; although once before for the plaintiff's brother he
had made a trip with his truck to Washington.   The plaintiff
engaged him to move his goods from Harrisonburg to Wash-
ington and on the trip the goods were injured by the over-
turning of the truck.   It was held not error to refuse a
requested instruction of the plaintiff which rested upon a
common carrier degree of liability.   See also *Georgia Life
Ins. Co.* v. *Easter*, 189 Ala. 472, 479; *Piedmont Manuf. Co.*
v. *Columbia & Greenville Railroad*, 19 S. C. 353, 370.

In the present case there was evidence from which the jury
could find that the defendant held himself out as a common
carrier in Easthampton, at least.   He had a license to engage
in the trucking business in that town, issued under section 32
of the by-laws which reads: " No person shall use any job-
wagon or express-wagon for the conveyance from place to
place in the town for hire, of any goods, wares, furniture,
merchandise or load without first having obtained a license
therefor from the Selectmen."   He had an office for the
carrying on of that business, on which was a sign, reading
" John Lewonis, Trucking, Wood & Coal."   The evidence
indicates that the truck was used mostly in delivering coal
and wood in Easthampton.   One Tanczar, who had operated
it for three years, testified that the only trips he took out of
town were two, — one when he took the plaintiff to Brattle-
boro, and the other when moving him back in September,
1920.   The plaintiff himself, who had worked for the de-
fendant, did not testify that he knew of any long distance
trucking being done.   The most that appears as to out of
town trips at or about this period is the plaintiff's testimony

(which was contradicted by the defendant), that Lewonis said " he had done some long trips off in New York and that way." It does not appear whether such trips, if made, were made by the defendant as a common carrier, or under special contract, with a lesser degree of liability. In fact at first he declined to do this work because he did not have the necessary help; and undertook it only when the plaintiff agreed to accompany the driver. Even assuming that the meager evidence warranted the trial judge in refusing to give the first request, the defendant was entitled to the second and third, which were directed to the distinction between a private and a common carrier. These were not given, in form or substance. On the contrary, the judge instructed the jury: " A railroad, a street railway, teamsters, truckmen and express companies are common carriers," and he called to their attention the fact that the defendant admittedly did a trucking business in Easthampton. The natural inference to be drawn was that the defendant was a common carrier, as matter of law. And what was said with reference to his doing business outside of Easthampton failed to properly emphasize the important distinction between the nature and responsibility of a common carrier holding himself out to the public as doing such long-distance trucking in the ordinary course of his business, and that of a private carrier or bailee for hire doing this work by special agreement and under less stringent liability. Much was said about liability based on negligence of the defendant; but this was immaterial in view of the elimination of the second count. The defendant duly saved his rights by excepting to the refusal to give his second and third requests, and to specified portions of the charge which were inconsistent with those requested instructions. The errors were prejudicial, because the defendant's main contention was that he was not acting as a common carrier in transporting the plaintiff's furniture from Brattleboro to Easthampton.

*Exceptions sustained.*